(This form is intended to be used by persons who are not represented by an attorney. The form should NOT be used by a prisoner who is filing a complaint under the Civil Rights Act, 42 U.S.C. section 1983. A separate form is obtainable for prisoners.)

RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

OCT 31 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

EMILY COHEN

_____

_____

_____

_____

(Enter above the **FULL** name of each
plaintiff in this action)

vs.                                    **COMPLAINT** & JURY DEMAND

_____  CITY OF IOWA CITY, IOWA, an Iowa municipality:
                                 JOHNSON COUNTY SHERIFF'S OFFICE;
_____  JOHNSON COUNTY, IOWA:
                                 IAN ALKE; MICHAEL HYNES; JOHN GOOD;
                                 DEMETRIUS MARLOWE; JANET LYNESS;
_____  RACHEL ZIMMERMAN SMITH; SUSI NEHRING
                                 DAVID VAN COMPERNOLLE; IOWA DOES;
_____  CITY OF BOULDER, COLORADO, a Colorado municipality;
                                 BOULDER COUNTY SHERIFF'S OFFICE;
                                 BOULDER COUNTY, COLORADO;
(Enter above the **FULL** name of each  ANDREW HARTMAN; ANNE KELLY;
defendant in this action)             MICHAEL DOUGHERTY; MICHELLE SUDANO;
                                 ADAM KENDALL; KRISTIN WEISBACH;
                                 CHRIS MERKLE; ELIZABETH ROTHROCK;
                                 THOMAS MULVAHILL; NANCY SALAMONE;
                                 STEVEN HOWARD; DINSMORE TUTTLE;
                                 GREGORY LYMAN; LINDY FROLICH;
                                 DARREN CANTOR; MARY CLAIRE MULLIGAN;
                                 WILL MULLIGAN; ROBERT WERKING;
                                 KATHLEEN SINNOTT; STANLEY GARNETT;
                                 ALEC GARNETT; JANE WALSH; KATI ROTHGERY;
                                 and COLORADO DOES.

**Parties**

(In item A below, place your name in the first blank and place your present address and telephone number in the second blank. In the third blank write the state where your home is ("Home State"). In item B below, do the same for additional plaintiffs, if any.)

A.    Name of Plaintiff   EMILY COHEN

Address & Telephone Number 820 MAGGARD ST., IOWA CITY, IA 52240.  (319) 541-4577

Home State  IOWA

B.    Additional Plaintiffs (include addresses, telephone numbers and home state for each)

_____

_____

_____

_____

(In item C below, place the **FULL** name of the defendant in the first blank place, the address and telephone number for the defendant in the second blank. In the third blank, write the state in which the defendant has his/her home. If the defendant is a corporation, list the location of its home office, and the state where it is incorporated, if known. If the defendant is a government agency, simply name it. In item D, do the same for additional defendants, if any.)

C.    Name of defendant   Extra sheet necessary and attached._____

Address & Telephone Number _____

Home State _____

D.    Additional Defendants (include addresses, telephone numbers and home state for each).

_____

_____

_____

**STATEMENT OF CLAIM**

(State here as briefly as possible the **FACTS** of your case.  You **MUST** state **EXACTLY** what each defendant personally did, or failed to do, which resulted in harm to you.  State the date **AND** place of all events.  Attach an extra sheet if necessary, and write the heading "Part II Continued" at the top of the sheet.  Keep to the facts.  Do not give any legal arguments or cite any cases.)

Extra sheet necessary and attached.

_____

_____

_____

_____

_____

_____

_____

(If you know, **BRIEFLY** state what **SPECIFIC** law of constitutional provisions defendant(s) violated.)

Defendants violated the U.S. CONSTITUTION via: the FIRST AMENDMENT (right to petition courts); FOURTH AMENDMENT (right to be free from unreasonable search and seizure); the FIFTH AMENDMENT due process clause (right to a hearing, right to counsel, fundamental right to family integrity); the SIXTH AMENDMENT (right to counsel); the EIGHTH AMENDMENT (pretrial right to be free of all punishment, including: excessive bail, excessive fines, and infliction of punishment and denial of food, water, medication, and sanitation; and the FOURTEENTH AMENDMENT due process clause and equal protection clause (right to be free from discrimination and retaliation on the basis of disability or sex, right to privacy, right to travel), as all enforced through 42 U.S.C. § 1983, as presented via 28 U.S.C. §§ 1331, 1343. Defendants violated 42 U.S.C. § 1985 (obstructing justice, intimidating party), as presented via 28 U.S.C. §§ 1331, 1343. Defendants do not have absolute immunity, because they were engaged in nonjudicial functions or acting in the absence of jurisdiction. Defendants do not have qualified immunity, because they violated and deprived Plaintiff of clearly established Constitutional rights while acting under the color of state law. Defendants who are municipalities also have no immunity, because they failed to train and were responsible for an unconstitutional custom or policy. Defendants violated 42 U.S.C. § 12101 et. seq. ("Americans with Disability Act of 1990," Title II and Title III: "the ADA") and 29 U.S.C. §701 et. seq. Defendants do not have sovereign immunity, absolute immunity, qualified immunity, or any other immunity at all, for the ADA claims, pursuant to U.S. v. Georgia, 546 U.S. 151 (2006) and Tennessee v. Lane, 541 U.S. 509 (2004), because Defendants' ADA violations were also denials of Plaintiff's Constitutional rights.

**RELIEF**

(State briefly **EXACTLY** <u>what you want the Court to do for you.</u>  Make no legal arguments.
Cite no cases or statutes.)

I am seeking compensatory, punitive, declaratory, and injunctive relief.

I want the Court to enter an order for judgment against the Defendants in an amount which will fully
and fairly compensate me for my injuries and damages, as medical treatment has already exceeded $90,000;
for attorney fees if counsel is retained; for interest and costs as allowed by law; for punitive damages
and for such other and further relief as may be just.  I want the Court to enter an order declaring that
Defendants violated the law.  I want the Court to enjoin the Defendants from continuing to violate the law.

I am requesting a jury trial on all issues raised by this Complaint.

**Signature(s) of Plaintiff(s)**

Signed this 31st  day of  October                  ,  2023              .

(Signature of Plaintiff)                          (319) 541-4577
                                                  (Area Code)-Telephone Number

**Part II Continued**

1. This is an action brought via this Complaint and Jury Demand to redress the deprivation – under color of policy, regulation, official decision, custom, or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 and §1985 arising under the Second and Fourth Amendments, incorporated to the states through the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Iowa, Article I, Bill of Rights, Sections 1, 2, 8, 9, 17, and 23; and includes Iowa common law negligence claims, Iowa statutory law claims, and public records disclosure claims.

2. Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343 and venue is appropriate in this district under 28 U.S.C. § 1391(b).

3. The unlawful acts alleged herein occurred at in Johnson County, Iowa, on or about November 2, 2021, continuing the long, sordid, and ongoing efforts of the Defendants covering up the wrongful conduct of their police officers, prosecutors, and judicial staff. See *People v. Cohen*, 440 P.3d 1256 (2019) (unanimous reversal of first trial); *People v. Cohen*, 22 CA 773 (docketed January 11, 2022; People's Response Brief now delayed for more than a year).

4. At all times material hereto, Plaintiff was a resident of Johnson County, IA.

5. Defendant City of Iowa City includes a police department and other administrative agencies (hereinafter referred to as "Iowa City") which employs Defendants Ian Alke, Michael Hynes, John Good, and Demetrius Marlowe, whom they failed to properly train, or monitor, and to compensate for the lack of expertise, training and oversight, Iowa City intentionally covers up wrongdoing by its police officers.

6. Defendant Iowa City is a governmental subdivision of the State of Iowa and duly incorporated under the laws of the State of Iowa. Iowa City is liable for the conduct of its

employees pursuant to the doctrine of *respondeat superior*, as well as pursuant to its failure to train.

7. Defendant IAN ALKE (hereinafter referred to as "Alke") was at all times material hereto an employee of the City of Iowa City, Iowa, and on information and belief a resident of Johnson County, Iowa, and violated Plaintiff's constitutional rights.

8. Defendant MICHAEL HYNES (hereinafter referred to as "Hynes") was at all times material hereto an employee of the City of Iowa City, Iowa, and on information and belief a resident of Johnson County, Iowa, and violated Plaintiff's constitutional rights.

9. Defendant JOHN GOOD (hereinafter referred to as "Good") was at all times material hereto an employee of the City of Iowa City, Iowa, and on information and belief a resident of Johnson County, Iowa, and violated Plaintiff's constitutional rights.

10. Defendant DEMETRIUS MARLOWE (hereinafter referred to as "Marlowe") was at all Times material hereto an employee of the City of Iowa City, Iowa, and on information and belief a resident of Johnson County, Iowa, and violated Plaintiff's constitutional rights.

11. Defendants IOWA DOES (multiple individuals who are each Person Doe, and are collectively referred to as "Iowa Does" until discovery reveals their identities) are unknown at this time, but upon information and belief are agents of Defendant City of Iowa City, Iowa, and on information and belief residents of Johnson County, Iowa, violated Plaintiff's constitutional rights, and are involved in a conspiracy to cover up the wrongful conduct of Defendants.

12. Defendants Alke, Hynes, Good, Marlowe, and Iowa City Does are hereinafter collectively referred to as "Iowa City Officers").

13. At all times material, Defendants Iowa City Officers were police officers or

correctional officers/jailers charged with implementing and complying with the general orders, rules, regulations and policies mandating how Plaintiff was to be taken into custody, booked, treated, monitored, and protected while in the custody of Defendant Johnson County at Defendant Johnson County Sheriff's Office's jail facility in Iowa City.

14. At all times material, Defendants Iowa City Officers worked for or with Johnson County and acting within the scope of their authority as correctional officers/jailers for Johnson County.

15. At all times material, Defendants Iowa City Officers were also employed by Iowa City and acting within the scope of their authority as police officers for Iowa City.

16. Plaintiff lives in Iowa. Defendants lives in Iowa and in Colorado, but they have all worked together remotely in Iowa and locally in Iowa.

17. Defendants worked together in Iowa from November 2021 to the present, which is the period of the current facts at issue in this case.

18. The evidence in this case is located in Iowa, after much of it was sent from Colorado to Iowa between November 2021 to the present.

19. Defendants state in their email messages to each other that they intended that the evidence they sent to Iowa or produced in Iowa would be used in Iowa to harm Plaintiff in Iowa.

20. It was used in Iowa, and it did harm Plaintiff in Iowa. This harm to Plaintiff first happened when Defendants worked together to deny Plaintiff access to federal rights in court and in the jail where they work in Iowa, which caused her to be denied her right to access the federal courts where she had a pending ADA Title II lawsuit against many of the Defendants in Colorado, which she filed after winning unanimous reversal of their prosecutorial misconduct in prosecuting her she petitioned and was granted Disability Inactive Status in the Colorado Supreme Court.

21.    Defendants' work together in Iowa has continued through the present day, and it is still hurting Plaintiff as described below.  All witnesses in this case live, work, or worked in Iowa. For these reasons, Plaintiff has filed this federal lawsuit in a United States District Court in Iowa.

22.    All Defendants in this case are or were lawyers, law enforcement officials, or municipalities.  The work they do at their jobs automatically generates court and other public records.  When they worked together at their jobs to harm Plaintiff, they were all acting "under color of state law," or purporting to do their jobs but actually doing things that were illegal because they didn't follow the federal laws that regulate how they do their jobs.

23.    The work Defendants that did has therefore also been memorialized as "cases" or "legal arguments," but any citations to them are included here as matters of "fact," not necessarily as legal arguments, and they specifically plead Plaintiff's case.

24.    A decade ago, Plaintiff worked for a very short time as a lawyer in Colorado. During that time, she experienced a disabling illness.  When she was hospitalized a number of times in Colorado from 2010 to 2013 due to medication reactions, she hired lawyers, financial advisors, and accountants to close her small immigration law firm in Boulder, Colorado.

25.    During that time, and at all times, Plaintiff actively protected her clients from harm. This fact is published in the U.S. District Court ruling published at *Reyes v. Snowcap Creamery Inc.*, 898 F. Supp. 2d 1233 (D. Colo. 2012), the first reported decision in Colorado ruling that immigration status is irrelevant and non-discoverable in unpaid wage claims.  Plaintiff's client then was able to win judgment for his unpaid wages, and he did, as shown at 2014 WL 1101446.

26.    Also during this time, Plaintiff petitioned and was granted "Disability Inactive Status" from the Colorado Supreme Court.  Its court rules say that Plaintiff's disability should have been a private matter.

27.    Instead, Defendants have made it very public, first in Colorado and now in Iowa.

28.    In 2010, Defendant Rothgery learned of Plaintiff's illness during their employment at the Colorado Supreme Court, when Plaintiff's lawyer disclosed it to that court as Plaintiff was hospitalized.

29.    While the Colorado Supreme Court granted Disability Inactive Status to Plaintiff, Defendant Rothgery, on their own initiative, claimed that Plaintiff "caused" her own disability.

30.    They decided to file ethics claims against Plaintiff in 2010 in Colorado.

31.    They gossiped about Plaintiff's disability and encouraged her peers and colleagues to also claim that Plaintiff should not be allowed to practice law while disabled, so they could allege there were multiple complaints, not just theirs.

32.    From 2010 to 2012, Defendant Rothgery told Plaintiff's lawyer at meetings in Denver that they believed that the Americans with Disabilities Act of 1990 ("the ADA") "did not apply" to their employer, the Colorado Supreme Court's Office of Attorney Regulation Counsel.

33.    A decade later, Plaintiff has learned that the Colorado Supreme Court is a "program or service" under Title II of the ADA, and that Plaintiff is, and has been for over a decade, a "qualified person with a disability" because she is a court user who lives with illnesses that affect her major life activities of working and reading, among other things.

34.    In 2012, Defendant Rothgery was informed by Plaintiff's lawyer that Plaintiff was seeking assistance to close or transition her law firm to other lawyers.

35.    Defendant Rothgery testified under oath that they then went on to contact Defendants S. Garnett and Walsh, who were at that time prosecutors in the state district courts in Colorado where Plaintiff lived at that time.  S. Garnett then included his son A. Garnett, who is not a lawyer, in the prosecution of that case.  At the trial, S. Garnett told jurors on the record in

that case, which appears in the transcript of that record, that his son gave his endorsement to this prosecution as a legislator, and that they should all vote for his son. This was just the beginning of S. Garnett's inclusion of his son A. Garnett in this matter. Plaintiff has never met A. Garnett and does not know him, but S. Garnett listed A. Garnett as a "victim" in Plaintiff's case, and Defendants all agreed in emails to place Plaintiff under 24-hour police GPS surveillance without ever charging her with a crime or alleging she had done anything to A. Garnett. "The plan is in place," Defendants wrote.

36.    Defendant Rothgery testified under oath that she asked Defendants S. Garnett and Walsh to work with her to prosecute *criminally* Plaintiff for closing her law firm.

37.    These Defendants all knew in 2012 that Plaintiff had disclosed her disability to Defendant Rothgery.

38.    As licensed attorneys and prosecutors, they knew or should have known in 2012 that ADA Title II prohibited them from denying reasonable accommodations for disability to Plaintiff, discriminating against Plaintiff on the basis of disability, or retaliating against Plaintiff on the basis of having requested Title II due process, all of which they did and continue to do to this day, by agreeing to prosecute her without jurisdiction, without reasonable suspicion, without probable cause, working with Defendant state court judges and Defendants Cantor and Frolich to deny her right to counsel in retaliation for having asserted her rights under ADA Title II and in retaliation for having won the appeal of their sloppy, malicious prosecution.

39.    They know or should know the same thing today in 2023, and they knew or should have known it for the decade and more in between, and yet they continue to violate take actions to harm Plaintiff, such as continuing for over a decade to keep meeting together, exchanging emails,

and talking on the phone, making continued agreements during this decade to work together in Colorado and then in Iowa to harm Plaintiff, which they did.

40.    Specifically, the harm that Defendants Rothgery, Walsh, and Garnett have inflicted on Plaintiff for over a decade includes their instructions to the other Defendants in this case to continue to prosecute Plaintiff even after the Speedy Trial statue had expired in the retrial of the appeal they lost and she won, encouraging them all to work together, transferring their former employees such as Defendants Weisbach, Rothrock, and Merkel, to work with Iowa City to arrest and torture Plaintiff in solitary confinement without food, water, or medication at all for days, and without food, water, or medication in correct amounts for weeks to months.

41.    At their first meeting in 2012 in Colorado, Defendants Rothgery, Walsh, and Garnett agreed that Defendant Rothgery would continue her work against Plaintiff by filing a series of false reports with the Colorado Supreme Court accusing Plaintiff of taking money from her immigration clients and then doing no legal work, to make it look like Plaintiff had stolen money from her clients and had a habit of harming her clients from 2010 through 2013 in Colorado.

42.    In 2014 in Colorado, Defendants Rothgery, Garnett, and Walsh told jurors the same thing, and Plaintiff was convicted of crimes and sentenced to horrible suffering. *Id.*

43.    In 2019, the Colorado Court of Appeals ruled that Defendant Garnett used his job and elected office as the Elected District Attorney in Boulder, Colorado, to maliciously prosecute Plaintiff for actions that were *not criminal*. This fact is published in the Colorado Court of Appeals opinion ordering its unanimous reversal and remand of Defendant Garnett's case against Plaintiff, after which he resigned mid-term from his elected office and went to work with Defendant Rothgery at a private law firm, from which he has since also resigned. *Id.*

collectively referred to as "the Defendant state court prosecutors," have worked to delay that "retrial" process in order to ensure that Plaintiff cannot receive any final resolution in Colorado of their wrongful conviction.

50.     The Defendant state court prosecutors admit that their malicious prosecution of Plaintiff has gone on in Colorado for the past decade. In 2021, Defendant Kelly admitted on the record in the Colorado state district court in Boulder that the statutory speedy trial period expired in that retrial in July 2021, and the Colorado statute required Defendant Hartman to dismiss the case at that time.

51.     Instead of dismissing the case in July 2021, however, Defendant Hartman agreed with the Defendant state court prosecutors, Defendant Rothrock, Defendant Merkle, and Defendant Weisbach to continue retaliating against Plaintiff for having "won," and to pursue her in Iowa.

52.     In 2021, all Defendants all began working together in Iowa.

53.     All Defendants all continue to work together in Iowa at the present time.

54.     All Defendants all continue to "overstep" in their criminalization of Plaintiff's disability, and their retaliation against her for having "won" the appeal of what they admitted in the state court on the record was a malicious prosecution.

55.     On November 2, 2021, they stepped into Iowa.

56.     On November 2, 2021, evidence in the state court proceedings shows that Defendant Weisbach contacted the Iowa City Police Department and asked how she might go about arresting someone in Iowa who had no criminal charges in Iowa.

57.    She spoke by phone with Defendant John Good, who is an Iowa City Police Officer and a Captain at the Johnson County Sheriff's Office where he oversees and directs the operations of the jail.

58.    Defendant Good told Defendant Weisbach that she would need to send him an arrest warrant alleging a crime in Colorado, and then he could "pursue a hold" even if there were no criminal charges alleged in Iowa.

59.    Defendants admit in emails that what they really wanted was for Plaintiff to miss the approaching filing deadline in the ADA Title II case she had then-recently filed in 2021 in the U.S. District Court in Denver, Colorado, where she reported their denial of her reasonable requests for accommodation under Title II of the ADA, their discrimination of her for being disabled, and their retaliation toward her for having disclosed her disability and having requested disability accommodations in the languishing Colorado proceedings.

60.    Emails between Defendants Hartman, Kelly, Sudano, Rothgery, and Garnett, all of whom were named in that ADA complaint, show that they had been corresponding for a number of months to decide how to arrest Plaintiff in Iowa City if she continued to pursue her ADA complaint.

61.    Instead of engaging in the discovery process or filing appropriate motions in the federal court case, open records requests show in motions filed by Plaintiff's defense counsel in the state court that these Defendants were all meeting and exchanging emails, text messages, inter-office messages, and phone calls to plan what actions to take to block Plaintiff's ability to access the federal court to maintain her case against them.

62.    They all agreed that Defendant Hartman could enter an order in the pending Boulder case to find that Plaintiff had – in Defendant Sudano's suggested terminology – "implicitly

relinquished" her right to counsel, and then order her appointed lawyer to be dismissed from her defense, leaving her without a lawyer, which they did in fact do in August 2021.

63.     Defendants Hartman, Kelly, Sudano, Rothgery, Garnett, Walsh, Rothrock, and Mulvahill all continued to send emails, which have been provided to Plaintiff in response to an open records request in Colorado, in which they all agreed they would wait for Plaintiff to commit a crime and then arrest her in Iowa, and then offer her release in exchange for dismissal of her ADA complaint, which also had an approaching filing deadline at that time.

64.     By November 2, 2021, Plaintiff still hadn't committed any crime, so Defendants didn't have a warrant or any way to get one to arrest her in Iowa. What they had instead was a Webex hearing on that day in the languishing Boulder case.

65.     Prior to the hearing, Defendants wrote emails to each other agreeing that they would ask for a warrant from Defendant Hartman after that hearing. He was working as a judge at that time in Colorado and was the judge on the bench during the 2014 trial put on by Defendant Garnett in Colorado against Plaintiff, which was unanimously reversed by the Colorado Court of Appeals in 2019, leaving the languishing retrial.

66.     On November 2, 2021, Defendant Hartman didn't have any reason to arrest Plaintiff either though, so Defendant Weisbach and Defendant Good agreed that, in order to arrest Plaintiff in Iowa City that day, prior to the approaching response deadline in her ADA complaint, they would draft an affidavit together with false statements alleging that Plaintiff had committed a crime, though they knew she hadn't, so they could get an arrest warrant. They agreed that Defendant Weisbach would swear and sign it, that Defendant Hartman would sign it, and that Defendants Alke, Hynes, Good, and Marlowe would arrest Plaintiff. Then they did those things.

67.    Their emails show they planned to get an "arrest warrant," but Defendant Hartman signed a "bench warrant" since the "crime" that Defendant Weisbach alleged was "failure to appear," which didn't happen.

68.    Defendant Weisbach stated that she wrote "failure to appear" in the warrant because there had been yet another hearing in the languishing Colorado retrial case on November 2, 2021, and though Plaintiff appeared at that hearing via WebEx, which she had been doing since the 2019 reversal, long before the Covid pandemic, as the Colorado state district court ordered that she could do, and the Colorado Rules of Criminal Procedure also authorized her to do, Defendant Weisbach alleged she had been "able to confirm" that the stationery on a note in Plaintiff's file did not include the name of the resident or physician assistant who wrote the note, but rather only the name of the attending physician, all of whom are newly licensed graduates who have since left their rotations at the University of Iowa, and most of whom upon information and belief have moved out of Iowa.

69.    Plaintiff hadn't committed any crime. She hadn't even failed to appear. She had merely complied with Defendant Hartman's (illegal) order that she forward him her medical records, after her denied her right to counsel.

70.    Plaintiff did in fact appear at the hearing on November 2, 2021, from Iowa City, and an entire hearing had been conducted with the Defendants who worked in that Boulder courtroom on November 2, 2021. The record of that hearing is complete with arguments on motions, which Plaintiff won, rulings, and adjournment. A complete hearing was had, and a complete record was made.

71.    After that November 2, 2021 hearing, however, the Defendants all contacted each other to keep brainstorming how they could arrest Plaintiff before the ADA complaint filing deadline.

72.     All Defendants all worked together all morning in Iowa on November 2, 2021, via telephone, fax, email, and text messaging to assemble their false statements in an affidavit for a warrant to arrest her for "failure to appear" at the hearing she had indeed appeared at, which they all knew she did.  On November 2, 2021, after being contacted by Defendant Merkle, an investigator with Defendant Boulder County, Defendant Alke stalked Plaintiff until finally stopping the car she was driving, for no reason, with no reasonable suspicion, while she was driving a car owned by her mother, with no probable cause, for no traffic citation, and with no local charges, and then Defendant Alke proceeded to forcibly and deceptively arrest her, all the while telling her she was not under arrest and telling her *Miranda* was "no longer good law."

73.     Defendant Hartman, who signed the warrant, was the same judge who also appeared at the hearing on November 2, 2021.  Since the warrant contained no correct or true factual allegations, but was instead a complete fabrication by Defendants, the warrant was defective and the arrest was illegal.

74.     The Court can also take judicial notice of Colorado appellate attorney Suzan Almony's recitation of these facts in the Opening Brief of case 22CA77, which she filed in 2022 in the Colorado Court of Appeals, arguing that Defendant Hartman was biased as a matter of law when he did this to Plaintiff.  The State of Colorado has delayed its response brief for 18 months in that case, and the Attorney General is now citing Defendant Hartman's own "right to remain silent."

75.     Defendants Alke, Hynes, Good, and Marlowe, who are all Iowa City Police Officers who work at the Johnson County Sheriff's Office jail, all physically arrested, restrained, and injured Plaintiff in Iowa City on November 2, 2021.

76.    Within the first 24 hours of Ms. Cohen's incarceration at the Johnson County Jail, the Boulder District Attorney's Office asked staff there to test Ms. Cohen for COVID-19 and to produce the results of any such tests. Previous tests had indicated that she tested positive, then negative, then positive a number of times more.

77.    More specifically, on November 3, 2021, Defendant Merkle, an investigator with the Boulder District Attorney's Office, emailed Defendant Good Johnson County Jail and told him, "Thank you for speaking with us this morning. When [Plaintiff] is tested for Covid please send me the results, with any supporting documentation."

78.    Later that same day, Defendant Good noted his "understanding" was that "a person can test positive for up to a few months with the covid tests after having it."

79.    Defendant Good stated in his emails with the other Defendants: "I cannot force this woman to take a covid test." He repeatedly referred to Plaintiff as "this woman."

80.    More emails on that day between Defendants Lyness, Zimmerman Smith, Nehring, and Van Compernolle  state that jail staff were "trying to get one set up," and they told Plaintiff that the results would "allow us to send you home," "will not leave this jail," and "cannot be used against you."

81.    Jail videos show that Plaintiff, though under arrest and in the process of being asked questions about her actions, was repeatedly denied when she requested a lawyer during that time, before testing and before signing documents for the Iowa City police officer Defendants.

82.    Jail videos show the Iowa City police officer Defendants telling Plaintiff that *Miranda* was "no longer good law," "doesn't apply," and "we don't have to do *Miranda*."

83.    It is undisputed that Plaintiff was never advised of her *Miranda* rights. Defendants don't deny that. Instead, they claim that *Miranda* was no longer good law. Of course that is false.

84.    Since Plaintiff was never advised of her Miranda rights, Plaintiff therefore could never have waived those rights.  Waiver of *Miranda* requires advisement, and it is undisputed that she was never advised.  Emails between Defendants M. Mulligan, W. Mulligan, Werking, Sinnott, Howard, Tuttle, Lyman, Frolich, and Cantor show these and other Defendants agreed, however, that Plaintiff "should have known police were deceiving her," and agreed to not object to Defendants' failure to advise Plaintiff of her Miranda rights and failure to provide her with a lawyer, and not to pursue or obtain her medical records.  This agreement by Defendants to deprive Plaintiff of the right to counsel also deprived her of access to the court because that argument remains unmade and unpreserved.

85.    In fact, Plaintiff was told that nothing she said or did in the jail in Iowa City would ever be used against her.

86.    Defendant Good, however, did just the opposite.  After telling Plaintiff that nothing she said or did would be used against her, and that her medical results would not be shared with anyone or used against her in any way, Defendant disclosed the result of that test with Defendant Weisbach, another investigator from the Boulder District Attorney's Office, who authored the affidavit in support of an arrest warrant.

87.    As noted by Defendant Weisbach in her affidavit, she received an email from Defendant Good on November 5, 2021, informing her that Plaintiff had supposedly tested negative for COVID-19 at the Johnson County Jail in Iowa, where Defendants had been holding her in solitary confinement without an attorney, without access to her doctors, without any food, water, medicine, shower, soap, or reliable phone access, for over three days by that time, in a holding cell that is smaller than a parking space, with no flushing toilet, no running water, rodent

infestation, pooling blood from Plaintiff's own cough and bodily functions, and dangerous temperatures.

88.    Jail medical records show that during that time Plaintiff suffered loss of muscle tone, bruising, bleeding, unmedicated Covid symptoms, unmedicated depression, anxiety, and severe panic attacks.

89.    After Plaintiff was finally able to speak by phone for under two minutes with a friend who is a lawyer, but was not her lawyer and was not licensed to practice law in Iowa, on the evening of November 2, 2021, Plaintiff followed his advice and asked Defendants Hynes, Good, and Marlowe to keep all videos from her interactions in the jail for all of her time there, and to provide her with copies of them.

90.    Instead of maintaining the videos, Defendant state court judges, Defendant state court prosecutors, Defendant Iowa City, and Defendant Iowa City police officers all exchanged more emails. In these emails, they all agreed that Defendant Marlowe would use his position as "records custodian" to "delete the worst of the videos," including specifically to delete "anything that shows her sick and screaming."

91.    In a motions hearing in Boulder in 2022, Defendant Hynes claimed he could not recall the status of the videos, but could recall Plaintiff screaming for help at the jail.

92.    In an open records action in 2023, which Plaintiff filed in the Iowa state court in an attempt to obtain the deleted videos after Defendant Marlowe claimed he "happened upon" more videos, Defendants Nehring and Van Compernolle admit in their Answer that Defendant Marlowe was instructed to delete videos and that he did indeed delete videos.

93.    They go on to claim that all other videos that had not been deleted had been provided to Plaintiff, but after filing that, they "happened upon" even more videos, none of which

are the ones that were deleted per the Defendants' agreements in email and other messaging, and they have yet to deliver them to Plaintiff, even to this day.

94.     The state court issued a subpoena duces tecum to the Iowa City Defendants to produce the "happened upon" videos, the remote copies of the deleted videos, and more discovery in that case, but Defendants told Plaintiff that they "have entered litigation mode" and that she "should sue them in federal court" if she believes they have agreed to work with the other Defendants to deprive Plaintiff of her right to access the courts by withholding the videos and other discovery in the multiple state court cases in which the videos are discoverable pursuant to Rule 16, *Brady*, and *Giglio*.

95.     Plaintiff never gave consent to anyone at the Johnson County Jail (or anyone else) to share protected health information supposedly obtained from staff there with anyone at the Boulder District Attorney's Office (or anyone else).

96.     Although the prosecution had directed Johnson County Jail staff to obtain a a signed release of information from Plaintiff while she was incarcerated in Iowa, that release of information was addressed specifically to "University of Iowa Hospitals and Clinics," not to the Johnson County Sheriff's Office, their jail staff, or any other members of law enforcement. Plaintiff was also told by the Iowa City Defendants that this information would not be shared with anyone, would not leave the jail, would not be used against her, and would allow her to go home.

97.     Plaintiff had and has a reasonable expectation of privacy in her protected health information collected and maintained by any jail where she's been incarcerated, and she never consented to the sharing of any such information with the Boulder District Attorney's Office or any other law enforcement agency.

98.     The evidence obtained from Ms. Cohen's body at the Johnson County Jail was

protected not only by the federal and state constitutions, but also by HIPAA, which applies to protected health information. *See, e.g.,* 42 U.S.C. § 1320d-6. Under § 1177 of HIPAA, the punishment for a violation of this provision is a fine of up to $50,000 or a prison sentence of up to one year.

99.     Obtaining, disclosing, or copying another person's medical information is a felony, and Defendants' emails show that they knew it was also a warrantless search of Plaintiff.

100.     Defendants Weisbach, Merkle, and Rothrock, investigators and clerks in the court's offices, have committed both federal and state crimes in obtaining Plaintiff's medical records without proper authorization, and by fraudulently inducing her to sign releases, and then acting in excess of even those releases. They likewise have a personal and financial interest in the outcomes of the state and federal cases that led to this case.

101.     In the state court cases, counsel for Plaintiff has filed many motions to preserve this and other prosecutorial misconduct and has asked for dismissal many times. For example, a "Motion to Dismiss for Repeated, Ongoing Outrageous Governmental Conduct" was filed on January 3, 2022. in Boulder.

102.     What makes these state cases relevant to this federal action is not the cases themselves or the decisions themselves. Plaintiff is not asking this Court to review the lower court decisions, only to take judicial notice of them as matters of fact. Plaintiff does not request this Court rule on anything or intervene with state court action in any way other than to issue declaratory relief and an injunction directing them to follow federal law.

103.     The prevailing relevant force in this case now before this Court, and what this Court can act upon, is the underlying agreement between all Defendants to deprive Plaintiff of her rights to counsel and presence in the state courts, and her right to access the federal courts.

104.    Defendants have engaged in over a decade of emails, instant messages, inter-office messages, letters, faxes, phone calls, and other communications in which they all agree to deny Plaintiff's ADA accommodations, to hurt Plaintiff because she requested ADA accommodations, and to falsify documents and arguments – and even arrest warrants – to hurt Plaintiff.

105.    Plaintiff tested positive for Covid, and medical records from the jail show that Defendants Alke, Hynes, Good, Marlowe were all told by the deputies at the jail, and therefore had actual knowledge, that from November 2 to December 6, 2021, Plaintiff at the jail was unable to breathe at times, was coughing up blood, was bleeding, had bruising and swelling on her arms and legs from Defendants' abuse at the jail, and had other horrendous physical injuries, yet these same Defendants denied her medical care.  They denied her transport to the hospital.

106.    Iowa Administrative Code 50.13(2), (a)(3) requires hourly checks, except for prisoners "considered to be in physical jeopardy because of physical or mental condition," who "shall be checked personally at least every 30 minutes until the condition is alleviated."  Records from the jail prove that Defendants did not do this.

107.    Defendants also denied Plaintiff communication with her doctor and with her family.  Instead of letting Plaintiff talk to her doctor and her family, Defendants' own emails show that they themselves talked with her doctor and her family, and then exchanged ideas via email with the other Defendants about how to use the information they obtained against Plaintiff.

108.    Again, all Defendants agreed to have Plaintiff held in solitary confinement in Iowa City at the Johnson County Sheriff's Office jail in a cell smaller than a parking space that was infested with mice and mice droppings, spiders, mold, and a toilet that didn't flush, with a push-button sink with water that barely ran and was tinted with red-colored rust and chemicals.

109.    From November 2, 2021, through to December, Plaintiff had no shower.  She had no soap, no toothbrush, no feminine hygiene products, no drinking water, and no food at all for five days, until after she signed papers she was forced to sign "to go home."

110.    The jail logs show that Defendants Good, Marlowe, Hynes, and Alke were told that Plaintiff was not being fed, hydrated, or allowed to shower "until she signs" the papers they wanted her to sign.

111.    They agreed by email to deceive Plaintiff by telling her that she could "go home" if she signed these.

112.    They told her in the solitary cell and in the hallways of the jail that if she signed papers, she could go home.

113.    They held the papers against the wall and told her to sign them, without letting her read them.

114.    Then, after signing these papers, Plaintiff was not allowed "to go home."

115.    Defendants Marlowe, Hynes, Good, Kelly, Kendall, Howard, and Tuttle all told Plaintiff that the papers she signed would not be used against her, and that she was not entitled to an attorney.

116.    The jail videos show them telling her that Miranda was no longer good law, that "we don't have to do Miranda," and that she had no right to counsel or due process.

117.    Then they used the papers against her and continued to hold her, denying her medication, medical care, food, water, telephone access, and access to running water, showers, and working toilets until December 6, 2021, at which time they sent her from Iowa to Colorado in literal chains.

118.    Once Defendants locked her in jail without access to a computer – much less any access to PACER, without access to call the U.S. District Court in Denver by phone, without a lawyer, and denied her access to send or receive U.S. Mail, Plaintiff was not able to respond to the ADA complaint she had filed, and it was dismissed by operation of law, not on the merits.

119.    Defendants Rothrock, Howard, Salamone, Kendall, Mulvahill, Kelly, Weisbach, and Sudano sent emails congratulating each other for this "victory" against Plaintiff. "Sure shut her up," one email says. "ADA that," another email says. "She is nothing if not crafty," says another.

120.    Defendants Hartman, Howard, Tuttle, and Lyman are all state court judges who violated ADA Title II when they summarily denied Plaintiff's reasonable requests for accommodation of her known and documented PTSD disability, which where requests that she have the public defense which she undisputedly qualified for and that she be present at the critical stages of proceedings, both of which are also her Constitutional rights. These Defendants also emailed with Defendants Cantor and Frolich, who coordinate the appointments of alternate public defense in Colorado, and they agreed to deny Plaintiff a lawyer. In fact, Defendant Frolich copied Plaintiff on an email, presumably inadvertently, that she sent to a clerk during a hearing and it was admitted during that hearing that Defendants Frolich and Cantor had been supplying the Defendant state court judges with the precise language to use in an order denying Plaintiff a lawyer. They were sending each other emails telling each other how to hurt Plaintiff. Defendant Lyman did make an oral order in court quoting that language, but then after Plaintiff forwarded Defendant Frolich's email to Defendant Cantor, Defendants changed course and never issued a written order with that language. Instead, they assigned Defendant Sinnott to represent Plaintiff, and she told Plaintiff, in a call that she insisted Plaintiff record, that she will "make sure" Plaintiff is "locked

up" if she continues to refuse to "plead out." Defendant Sinnott did no work to defend Plaintiff; instead, her appointment continued to deny Plaintiff the right to counsel.

121.   These Defendants knew Plaintiff was had sought remedies in federal law via the ADA, and they hurt her in order to make sure she couldn't access those remedies.

122.   Then all Defendants celebrated via email and instant messenger, which were later produced in response to a Colorado open records request.

123.   All named Defendants all admit that they knew at all times in this lawsuit that Plaintiff was and is disabled. They knew because it was so highly published. They knew because she told them.

124.   They all knew she needed daily medication because she told them, and they all denied her medication and medical treatment.

125.   They knew she needed her doctors and disability supports, because she told them, and because her doctors told them, and they denied those, too.

126.   They all knew she needed medical care, hygiene, and sanitation, yet they told her it was "policy" at the Iowa City jail to deny those things.

127.   They all knew they were required to provide her with an attorney when she requested one repeatedly at the jail, yet jurors will see videos showing Defendants Marlowe, Good, Hynes, and Alke telling her that their "policy" was "we don't have to do *Miranda*."

128.   In fact, after Plaintiff complained about this, the Iowa City police officer Defendants admit in emails with Defendants Kendall, Sinnott, and Howard that they have "updated" their "policy" by adding to the jail handbook a statement that anything said may be used against a person being held at their jail. Prior to November 2, 2021, jail supervisor Defendants Good, Marlowe, Alke, and Hynes all knew that the risk of denying Constitutional rights such as

the privilege against self-incrimination, the right to counsel, the right to be free from searches and seizures, and other Constitutional rights without such a "policy" and without training about it.

129.    Even with this knowledge, they all failed to train staff to obey federal laws such as an arrested person's rights to Constitutional due process, the right to counsel prior to being interrogated – no less tortured -- in custody as Plaintiff was, and other rights guaranteed in *Miranda*.

130.    During the time Plaintiff was being held in the Iowa City jail, Defendants Van Compernolle, Nehring, and Lyness, who are or were at that time City Attorneys tasked to defend the police in Iowa City, all exchanged emails with their clients Defendants Hynes, Alke, Good, and Marlowe, along with Defendants Kelly, Sudano, Kendall, Dougherty, and Weisbach in Colorado, and all Defendants agreed that video monitoring showing Plaintiff's illness, distress, and torture in solitary confinement should be manually deleted at the jail.

131.    These Defendants all knew that they had an ongoing discovery obligation under Rule 16, *Brady*, *Giglio*, and other state and federal laws to preserve and produce all of these videos and give them to defense counsel in the warrant case from Colorado.

132.    Instead, the Defendants in Colorado made sure she didn't have a lawyer in the warrant case in Colorado, and the Defendants in Iowa made sure the videos were all manually deleted.

133.    Defendant Van Compernolle admits this in an Answer he filed in Plaintiff's open records lawsuit in the Iowa state district court, and in recorded court-ordered phone calls in that case.

134.    Defendants all agreed to deny Plaintiff any bond whatsoever, and then all agreed to demand an outrageous bond they knew she couldn't pay at that time.

135.    They all agreed to hold her in solitary confinement in Iowa for six weeks without medication, denying her food, water, hygiene, and more.

136.    Their emails show they planned and agreed to tell her that she wasn't entitled to a lawyer during custodial interrogation.

137.    Their emails show they all agreed to tell her she could "go home" if she signed releases of her federally protected health information, and that they would not use any of this against her.

138.    Instead, however, they used all of it against her.

139.    They took portions of that health information, mischaracterized it, and filed new felony charges against her in December 2021 based on this information.

140.    Defendants admit in their emails to one another that they couldn't arrest Plaintiff for any crime, because she hadn't committed any crime. Then their emails congratulate each other for making one up themselves.

141.    Defendants all worked together to fabricate a defective warrant, to arrest her without probable cause, and then to hold and torture her for six weeks before sending her from Iowa to Colorado in chains.

142.    In 2022, Plaintiff later filed another ADA complaint in Colorado, after her first one was dismissed when she couldn't respond while locked in Defendants' jail. That ADA complaint only alleges violations of Title II of the ADA. It only asks for compensatory relief, not future relief. It only addresses the actions that only Andrew Hartman and Anne Kelly took, which occurred prior to this case. It does not address any of the other Defendants in this case. It does not address any law other than the ADA. It does not allege any violations of any other laws. It

does not rely on 42 U.S.C. Section 1983 or 1985 to address any of the Constitutional violations that are mentioned in this case here now.  It is only an ADA complaint.

143.    The Colorado Attorney General responded to that ADA complaint and stated that allegations occurring on and after November 2, 2021, were not relevant to that complaint.

144.    Defendants Kelly and Hartman also both resigned from their positions.

145.    Defendant Kelly is no longer a Boulder prosecutor.

146.    Defendant Hartman recused from Plaintiff's case, as did the entire bench of that court, after Plaintiff appealed his denial of her right to counsel in retaliation of her ADA complaint, after which Ms. Almony filed the brief establishing his bias as a matter of law.

147.    For these reasons, and because all Defendants named in this case specifically acted in Iowa to harm Plaintiff in Iowa, and many are government employees of the State of Iowa or its municipalities, who all live and work in Iowa, this case is properly filed in the U.S. District Court in Iowa.

148.    The City of Iowa City is properly named as a Defendant for its failure to train its police officers and other municipal employees who harmed Plaintiff.

149.    Defendants Iowa City police officers acting under the color of state law violated Plaintiff's right to be free from the use of excessive force in being placed under arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section Eight, of the Iowa Constitution.

150.    Defendants Iowa City police officers proximately caused damages including emotional pain and trauma, past and future to Plaintiffs using excessive force in effectuating the wrongful arrest in violation of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section Eight, of the Iowa Constitution.

151.    Defendants Iowa City and Johnson County, Iowa established a policy, regulation, official decision, custom, or usage, and/or ratified such conduct after the fact, with reckless or deliberate indifference to the rights of persons in the position of Plaintiff.

152.    Defendants Iowa City and Johnson County, Iowa have established, maintained, enforced, and/or ratified policies, regulations, official decisions, customs, or usages which unconstitutionally deprive citizens of the right to be free from the use of excessive while being detained as guaranteed by the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Iowa Constitution.

153.    Defendants Iowa City and Johnson County, Iowa through policymakers and managers had actual or constructive knowledge of the use of excessive force by its employees and/or ratified such conduct after the fact.

154.    Plaintiff was subjected to this official policy, regulation, official decision, custom, usage, and/or after-the-fact ratification when she was tortured by Defendants Iowa City and Johnson County, Iowa.

155.    Defendants' policy, regulation, official decision, custom, usage, and/or after-the-fact ratification as against Plaintiff was purposeful and intentional.

156.    Defendants deprived Plaintiff of the rights guaranteed her under the Fourth Amendment to the United States Constitution, and Section I, Article 8, of the Iowa Constitution, in violation of 42 U.S.C. § 1983, by seizing her such that no reasonable person in her position would have believed they were free to leave because she had been taken into custody, and jail videos shows that when she asked them "Am I free to leave?" they answered "hell no."

157.    Plaintiff has been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

158.    Defendants Iowa City police officers, Colorado state court judges, and Colorado state court prosecutors have all acted in a reckless and/or malicious manner subjecting them to punitive damages.

159.    WHEREFORE, the Plaintiff prays for judgment against the Defendants, Iowa City and Johnson County, City of Boulder and Boulder County, Colorado, and all of their employees individually, in an amount which will fully and fairly compensate her for her injuries and damages; for attorneys' fees when counsel is retained; for interest and costs as allowed by law; for punitive damages against the above-reference Defendants in this paragraph; and for such other and further relief as may be just in the premises.

160.    All Defendants acted in concert to falsely arrest Plaintiff in Iowa City in an unreasonable, unnecessary and/or reckless manner, resulting in Plaintiff's injuries.

161.    At the time Defendants acted in concert to falsely arrest Plaintiff in Iowa City, they all knew she had not failed to appear at the hearing as was alleged in the arrest warrant, because they were either on the court call and heard that Plaintiff did appear, or they were told in email that she did in fact appear as she had been ordered for years to appear in those proceedings, and as is Colorado law, and they knew she had not committed any offense.  They all stated in emails that they were acting to harm her because they didn't want her to advance her federal ADA lawsuit against them for their earlier denials of her accommodations, and their earlier retaliation against her.

162.    Defendants made the decision to falsify an arrest warrant.

163.    Defendants made the decision to assault Plaintiff during the arrest.

164.    Defendants made the decision to torture Plaintiff, including to starve her body and deny her previously prescribed medications and water entirely for more than five days in a row, until she signed the papers they forced her to sign.

165.    Defendants' agreements in emails to continue to deny Plaintiff her ADA accommodations and to retaliate against her, including to deny her right to counsel and her right to presence to access the courts and petition the courts for redress, was so egregious and outrageous as to shock the conscience.

166.    In making these agreements to deprive Plaintiff of her rights, and then carrying them out, Defendants acted with deliberate indifference to a significant risk of harm to Plaintiff and did so, at least in part, because Plaintiff is a woman.  Their emails refer to her over and over as "this woman," "this bitch," and "a woman lawyer."

167.    In making these agreements to deprive Plaintiff of her rights, and then carrying them out, Defendants acted with the specific intent to cause harm.  Their emails say they want to hurt Plaintiff, to "make her sorry" for filing the first federal lawsuit she filed, and they did.

168.    In making these agreements to deprive Plaintiff of her rights, and then carrying them out, under the color of state law, Defendants violated the right of Plaintiff to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution.

169.    Defendants Iowa City and Johnson County, Iowa violated the right of Plaintiff to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution by engaging in a cover up of all Defendants' wrongful conduct.

170.    Plaintiff has been damaged as a direct and proximate result of Defendants' acts

and omissions, as set out in this Complaint.

171.    WHEREFORE, the Plaintiff prays for judgment against the Defendants, Iowa City and Johnson County, City of Boulder and Boulder County, Colorado, and all of their employees individually, in an amount which will fully and fairly compensate her for her injuries and damages; for attorneys' fees when counsel is retained; for interest and costs as allowed by law; for punitive damages against these Defendants; and for such other and further relief as may be just in the premises.

172.    Defendants had no legitimate reason to arrest Plaintiff in the first place because they knew that Plaintiff had not failed to appear.

173.    Defendants acted unreasonably by stopping Plaintiff.

174.    Defendants acted unreasonably by using torture force in order to seize Plaintiff when no such force was justified.

175.    Defendants, acting under the color of state law, violated the right of Plaintiff to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

176.    Defendants proximately caused damages to Plaintiff by unlawfully and without a proper basis to do so, stopping her vehicle and seizing her in violation of her rights guaranteed by the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

177.    WHEREFORE, the Plaintiff prays for judgment against the Defendants in an amount which will fully and fairly compensate her for her injuries and damages; for attorneys' fees.

178.    Defendants do not have sovereign immunity, absolute immunity, qualified immunity, or any other immunity at all, for the ADA claims, pursuant to U.S. v. Georgia, 546 U.S. 151 (2006) and Tennessee v. Lane, 541 U.S. 509 (2004), because Defendants' violations of the ADA were also denials of Plaintiff's Constitutional rights.

179.    Defendants also lack immunity because they all acted without jurisdiction.

180.    After the Colorado Court of Appeals unanimously reversed Defendants' malicious prosecution and wrongful conviction of Plaintiff, and remanded that 2014 case for a new trial in 2019 based on Defendant Hartman's dozens of Constitutional errors in presiding over that case, the statutory Speedy Trial period in that retrial expired in July 2021. *See Cohen, supra, Petition for Rule to Show Cause Pursuant to C.A.R. 21, filed in Case 21SA207 on July 12, 2021.*

181.    Therefore, Defendant Hartman had no jurisdiction in that case to order Plaintiff to send him her medical records, to appear via WebEx, to appear in person, to revoke or deny any bond, to issue arrest warrants, or to enter any orders or hold any hearings in that case after the expiration of speedy trial.

182.    Colorado's speedy trial statute provides, in pertinent part, "if a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody if he has not been admitted to bail, and, whether in custody or on bail, the pending charges shall be dismissed[.]" C.R.S. § 18-1-405(1)."

183.    This statute "is intended to safeguard a defendant's constitutional right to a speedy trial and to prevent unnecessary prosecutorial and judicial delays in the prosecution of a criminal case." *DeGreat*, 461 P.3d at 14.

184.        Defendant Hartman repeatedly misapprehended and misapplied

Colorado's speedy trial statute in Ms. Cohen's 2014 case. *See Cohen, supra, Motion to Dismiss*

*for Lack of Jurisdiction, filed in Case 21CR1982 on April 12, 2022.*

185.    42 U.S.C. § 1985 makes it unlawful for two or more parties to conspire to deny

Constitutional rights, privileges, and immunities to citizens, including equal protection and sex-

based animus.

186.    All Defendants have conspired to cover up the wrongful and unconstitutional

conduct of all Defendants by refusing to disclose the facts and circumstances of Plaintiff's cases,

by misleading the public about the justification for the Iowa arrest, and by deleting videos and

other evidence.

187.    Defendants City of Iowa City, Johnson County Sheriff's Office, Johnson County,

Iowa, City of Boulder, Colorado, Boulder County Sheriff's Office, and Boulder County,

Colorado, through its employees and agents including the Iowa Does and the Colorado Does,

have a history of editing and selectively releasing audio/video in order to conceal wrongful

conduct by its officers. Defendants released only portions of the video of the subject matter

incident selected in order to put their conduct in the best light possible, while their emails show

they instructed their employees and agents to delete the majority of the footage.

188.    Defendants specifically and unlawfully refused an open records request from

Plaintiff for all audio, video, reports and investigative files of her time in their custody, where she

was tortured. Defendant Van Compernolle, for example, told Plaintiff on a phone call that he

insisted her record that "no one is gonna [sic] see anything to make them think you were tortured even though we didn't feed you for a week."

189.    Even after the Iowa Supreme Court issued a recent decision noting that "'[t]here is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012). 'Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability.' *Diercks*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)).'" *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 201, pp. 10-11, Defendants refused to release records covered by the *Mitchell* holding.

190.    Defendants refused to release "any investigative reports or electronic communication generated or filed within 96 hours of the incident, but does not apply to reports or memorandum generated solely for purposes of a police internal review of the incident," as held by the Iowa Supreme Court in *Mitchell*. At p. 6.

191.    Defendants refused to provide a privilege log identifying what records it was refusing to release and then attempted to put the burden on Plaintiff to "provide the City with the public interest(s) disclosure of such records would serve," without identifying the records, all in violation of Iowa law and the holding in *Mitchell*.

192.    Defendants claimed the exclusive right to determine what records are to be produced, contrary to the holding in *Mitchell*, stating that the City "will weigh the public interests identified by you against the public interest(s) that would suffer by disclosure."

193.    Finally, Defendants claimed that its agent alone will "identify any records weighing in favor of disclosure to you and provide with you the reasonable fee for the

actual cost of providing copies of such records," charging Plaintiff $60 for records it "happened upon" later, all in violation of Iowa law and the holding in *Mitchell*.

194.   For nearly two years, Defendants have been intentionally delaying the freedom of information act process and filing unnecessary and frivolous objections to requests they release information, all for the purpose of covering up the wrongful conduct of its agents and employees, including police officers.

195.   Defendants reached an agreement to cover up all wrongful conduct of law enforcement officers employed by the Defendants and to deny the class of individuals, particularly those who are disabled and those who are women, and those subjected to wrongful sex-based conduct by Defendants' police officers, equal protection under the law and privileges and immunities under the law. Plaintiff is one such individual in this class.

196.   Defendants proximately caused damages to Plaintiff by conspiring to deny access to the facts and circumstances surrounding the arrest of Plaintiff without a proper basis to do so in violation of 42 U.S.C. § 1985.

197. The individual agents of Defendants conspired and agreed to keep the public from being informed of the wrongful and unconstitutional conduct of Defendants, and routinely conspire to cover up all wrongful conduct by Defendant law enforcement officers particularly involving wrongdoing inflicted upon sex minorities and minorities with disabilities, such as Plaintiff.

198.   WHEREFORE, Plaintiff prays for judgment against the Defendants in an amount which will fully and fairly compensate her for her injuries and damages; for attorneys' fees when counsel is retained; for interest and costs as allowed by law; for punitive damages against the individual Defendants; and for such other and further relief as may be just in the premises.

199.   The public records request in this case has been pending for nearly two years.

200.    The tactics of Defendants intent on keeping government wrongdoing secret have made it fruitless and impossible to properly enforce Iowa's open records laws.

201.    Defendants should be immediately required to release all information regarding the illegal arrest and detainment of Plaintiff in compliance with the holding of the Iowa Supreme Court in *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 2019.

202.    Defendants have acted in violation of Article I, Section 2, of the Iowa Constitution, requiring that "[a]ll political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

203.    WHEREFORE, the Plaintiff prays for an Order from this Court requiring the Defendants to publicly release all records regarding the illegal arrest and detainment of Plaintiff, in compliance with *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 201; for attorneys' fees when counsel is retained; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

### JURY DEMAND

204.    Plaintiff respectfully requests a trial by jury on all legal claims raised by this Complaint.

## Item C: Defendants

**CITY OF IOWA CITY, IOWA, an Iowa municipality**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JOHNSON COUNTY SHERIFF'S OFFICE**
Address: 511 S Capitol Street, Iowa City, IA 52244
Telephone Number: (319) 356-6020
Home State: Iowa

**JOHNSON COUNTY, IOWA**
Address: 417 S. Clinton Street, Iowa City, IA 52240
Telephone Number: (319) 339-6100
Home State: Iowa

**IAN ALKE**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**MICHAEL HYNES**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JOHN GOOD**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**DEMETRIUS MARLOWE**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JANET LYNESS**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**RACHEL ZIMMERMAN SMITH**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**SUSI NEHRING**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**DAVID VAN COMPERNOLLE**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**IOWA DOES**
Address: Unknown
Telephone Number: Unknown
Home State: Iowa

**CITY OF BOULDER, COLORADO, a Colorado municipality**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**BOULDER COUNTY SHERIFF'S OFFICE**
Address: 5600 Flatiron Parkway, Boulder, CO 80301
Telephone Number: (303) 441-3600
Home State: Colorado

**BOULDER COUNTY, COLORADO**
Address: 1325 Pearl Street, Boulder, CO 80302
Telephone Number: (303) 441-3190
Home State: Colorado

**ANDREW HARTMAN**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ANNE KELLY**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**MICHAEL DOUGHERTY**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**MICHELLE SUDANO**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ADAM KENDALL**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**KRISTINE WEISBACH**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**CHRIS MERKLE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ELIZABETH ROTHROCK**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**THOMAS MULVAHILL**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**NANCY SALAMONE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**STEVEN HOWARD**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**DINSMORE TUTTLE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**GREGORY LYMAN**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**LINDY FROLICH**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**DARREN CANTOR**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**MARY CLAIRE MULLIGAN**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**WILL MULLIGAN**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**ROBERT WERKING**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**KATHLEEN SINNOTT**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**STANLEY GARNETT**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**JANE WALSH**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**KATI ROTHGERY**
Address: 1300 Broadway Street, Suite 500, Denver, CO 80203
Telephone Number:
Home State: Colorado

**COLORADO DOES**
Address: Unknown
Telephone Number: Unknown
Home State: Colorado

## Item C: Defendants

**CITY OF IOWA CITY, IOWA, an Iowa municipality**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JOHNSON COUNTY SHERIFF'S OFFICE**
Address: 511 S Capitol Street, Iowa City, IA 52244
Telephone Number: (319) 356-6020
Home State: Iowa

**JOHNSON COUNTY, IOWA**
Address: 417 S. Clinton Street, Iowa City, IA 52240
Telephone Number: (319) 339-6100
Home State: Iowa

**IAN ALKE**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**MICHAEL HYNES**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JOHN GOOD**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**DEMETRIUS MARLOWE**
Address: 410 E Washington Street, Iowa City, IA 52240
Telephone Number: (319) 356-5000
Home State: Iowa

**JANET LYNESS**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**RACHEL ZIMMERMAN SMITH**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**SUSI NEHRING**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**DAVID VAN COMPERNOLLE**
Address: 500 S. Clinton Street, Suite 400, Iowa City, IA 52244
Telephone Number: (319) 339-6100
Home State: Iowa

**IOWA DOES**
Address: Unknown
Telephone Number: Unknown
Home State: Iowa

**CITY OF BOULDER, COLORADO, a Colorado municipality**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**BOULDER COUNTY SHERIFF'S OFFICE**
Address: 5600 Flatiron Parkway, Boulder, CO 80301
Telephone Number: (303) 441-3600
Home State: Colorado

**BOULDER COUNTY, COLORADO**
Address: 1325 Pearl Street, Boulder, CO 80302
Telephone Number: (303) 441-3190
Home State: Colorado

**ANDREW HARTMAN**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ANNE KELLY**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**MICHAEL DOUGHERTY**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**MICHELLE SUDANO**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ADAM KENDALL**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**KRISTIN WEISBACH**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**CHRIS MERKLE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**ELIZABETH ROTHROCK**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**THOMAS MULVAHILL**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**NANCY SALAMONE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**STEVEN HOWARD**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**DINSMORE TUTTLE**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**GREGORY LYMAN**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**LINDY FROLICH**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**DARREN CANTOR**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**MARY CLAIRE MULLIGAN**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**WILL MULLIGAN**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**ROBERT WERKING**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**KATHLEEN SINNOTT**
Address: 1300 Broadway Street, Suite 330, Denver, CO 80203
Telephone Number: (720) 994-2840
Home State: Colorado

**STANLEY GARNETT**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**JANE WALSH**
Address: 1777 Broadway Street, Boulder, CO 80302
Telephone Number: (303) 441-3090
Home State: Colorado

**KATI ROTHGERY**
Address: 1300 Broadway Street, Suite 500, Denver, CO 80203
Telephone Number:
Home State: Colorado

**COLORADO DOES**
Address: Unknown
Telephone Number: Unknown
Home State: Colorado

RECEIVED

OCT 31 2023

CLERK U.S. DISTRICT COURT
_____ OF IOWA

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

EMILY COHEN

**DEFENDANTS**

THE CITY OF IOWA CITY, ET AL.

**(b)** County of Residence of First Listed Plaintiff    Johnson County, Iowa
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Johnson County, Iowa
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

pro se

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Const. amend. I, IV, V, VI, VIII, XIV; 42 USC §§1983, 1985, 12101 et seq.; 29 USC § 701 et seq.
Brief description of cause:
Civil Rights, including ADA (non-employment).

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions:)*    JUDGE    DOCKET NUMBER

DATE    10/31/23

SIGNATURE OF ATTORNEY OF RECORD    pro se

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE