**EXHIBIT N**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.              23-cv-02104-SBP

EMILY COHEN,
Plaintiff,

v.

STEPHEN HOWARD, in his official capacity as District Court Judge,
DINSMORE TUTTLE, in her official capacity as District Court Judge,
GREG LYMAN, in his official capacity as District Court Judge,
JANEL BRAVO, in her official capacity as Statewide ADA Coordinator,
MICHAEL DOUGHERTY, in his official capacity as District Attorney,
ADAM KENDALL, in his official capacity as Deputy District Attorney,
JEFF WEEDEN, an individual,
KATHY SINNOTT, an individual,
ROB WERKING, an individual,
MARY CLAIRE MULLIGAN, an individual, and
R. CHRISTIAN GRIFFIN, an individual,
Defendants.

---

### FIRST AMENDED COMPLAINT,
### PURSUANT TO MAGISTRATE'S 11/9/23 ORDER TO AMEND

---

*[NOTE: THIS IS THE PRO SE FORM]*

**A.      PLAINTIFF INFORMATION**

EMILY COHEN, 820 Maggard Street, Iowa City, IA 52240

(319) 541-4577  emilycohenboulder@gmail.com

<span style="color:red">**EXHIBIT N**</span>

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

**B.      DEFENDANTS INFORMATION**

Defendant 1:      STEVEN HOWARD,  1777 6th St., Boulder, CO 80302

(303) 441-3744  debbie.beck@judicial.state.co.us (clerk)

Defendant 2:      DINSMORE TUTTLE, 1777 6th St., Boulder, CO 80302

(303) 413-7071  debbie.beck@judicial.state.co.us (clerk)

Defendant 3:      GREG LYMAN, 1777 6th St., Boulder, CO 80302

(303) 441-3744  debbie.beck@judicial.state.co.us (clerk)

Defendant 4:       JANEL BRAVO, 1300 Broadway, Denver, CO 80203

(720) 625-5908 janel.bravo@judicial.state.co.us

Defendant 5:      MICHAEL DOUGHERTY, 1777 Sixth Street, Boulder, CO 80302

(303) 413-7071  mdougherty@bouldercounty.org &
mdougherty@bouldercounty.gov

Defendant 6:      ADAM KENDALL, 1777 Sixth Street, Boulder, CO 80302

(303) 413-7071  akendall@bouldercounty.org &
akendall@bouldercounty.gov

Defendant 7:      JEFF WEEDEN, 891 14th St., #2706, Denver, CO 80202

(970) 819-1763  jlweeden@weedenlaw.com

Defendant 8:      KATHY SINNOTT, P.O. Box 461198, Aurora, CO 80046

(719) 359-4580  kathy@sinnottlawoffice.com

Defendant 9:      ROB WERKING, 5200 DTC Pkwy. Ste 410, Greenwood Village, CO
80111

(720-961-6518) Rob@lfmdefense.com

Defendant 10:      MARY CLAIRE MULLIGAN, 89 Gold Trail, Boulder, CO  80302

303-898-0381 mcmulligan@me.com

Defendant 11:      R. CHRISTIAN GRIFFIN, 89 Gold Trail, Boulder, CO  80302

(720) 524-4406  christian@christiangriffinlaw.com

EXHIBIT N

*[NOTE: THIS IS THE PRO SE FORM]*

**C.    JURISDICTION**

__x__ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States):

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134 (Title II), 12203(b) (ADA Interference);

Department of Justice ("DOJ") regulations implementing ADA Title II, 28 C.F.R. pt. 35;

Section 504 of the Rehabilitation Act in 29 U.S.C. 794a; and

U.S. Const. amend. I, IV-VI, XIV.

__x__ Diversity of citizenship, as Plaintiff is a resident of Iowa and Defendants are residents of Colorado, and the amount in controversy exceeds $75,000, as Plaintiff's medical bills alone for the physical injuries in this case are in excess of $120,000 and growing.

**D.    STATEMENT OF CLAIMS**

<u>**INTRODUCTION**</u>

1.  Plaintiff attaches hereto as **Exhibit 1** the original Complaint she filed in this case on August 18, 2023, and as **Exbibit 2** the Objection to Magistrate's Order she filed in this case on November 14, 2023, and incorporates the contents of both pleadings herein by reference, as if restated word-for-word here entirely.

2.  To summarize: Plaintiff lives with dyslexia and PTSD which affect her ability to read, write, speak, work, and sleep.  She previously worked as an attorney in Colorado, and now she lives in Iowa.  After a short few years of immigration practice, Plaintiff voluntarily petitioned and was granted Disability Inactive Status in the Colorado Supreme Court and closed her own law practice.

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

3.   Then, as the state court records show, a team of prosecutors and judges – the majority of whom have gone on to resign midterm from elected office, "retire early," or "be reassigned" to other cities – proceeded to allege that she was not "really disabled," alleging that hospitalization for disability was proof of a crime.   The Colorado Court of Appeals disagreed and reversed unanimously.

4.   Defendants and their colleagues have said on the record that disability "isn't real," that Plaintiff "caused her own illnesses," and that treatment is "irrelevant and embarrassing."

5.   For ten years now, Defendants and their predecessors have harassed Plaintiff in and out of the state district court, unable to convict her of any crime.

## FACTUAL ALLEGATIONS

6.   Plaintiff has been fortunate to work with a task-trained ADA-compliant Service Dog since January 2022.   His name is James.



EXHIBIT N

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

7.   James is an adult male Golden retriever who is cardiac-alert task-trained individually for Plaintiff's PTSD disability.

8.   He responds to PTSD tachycardia and tachypnea by putting a paw on Plaintiff, alerting, or nudging her to take prescribed medications to lower her heart rate, so that Plaintiff doesn't have a heart attack.

9.   Judge Howard asked in open court why Plaintiff cannot just take this medication prophylactically without an alert.   Plaintiff answered him, but that question was an impermissible inquiry, and violated Title II.  *See* 28 C.F.R. §35.136(f).

10. From January 2022 to August 2023, James attended every court hearing in the state court case in which all Defendants have interacted with Plaintiff, wearing his third-party certification vest and carrying USDA paperwork in it, even though vests and certificates are not required by law.

11. As the Court admits in its last Order, the state court had no legal basis to deny Plaintiff's access to the courthouse with James.

12. Instead, the state court judges – Defendants Howard, Tuttle, and Lyman -- had a duty to enforce the ADA and to clarify to the agreeing parties – Defendants Kendall, Sinnott, Werking, Mulligan, and Griffin – that Plaintiff <u>must</u> be allowed to access the courtroom with James.  They refused.

13. As the Court's prior Order acknowledged, James passes all inquiries of admission: Plaintiff is disabled; James is task-trained for that disability; Plaintiff told Defendants what, why, and how.  That should have been the end of any inquiry.

14. Instead, Defendants have spent two years violating the confidentiality

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

requirements of the ADA by publishing details of Plaintiff's disability to the public in court filings, and interfering with her ADA access rights by agreeing to ban James, up to and including threatening to "impound" him if Plaintiff were to bring him to a jury trial.

15. From December 2021 to November 2023, Judge Howard claimed he could not rule on the admissibility of a Service Dog, and claimed he could not rule on ADA accommodations at all.

16. For almost two years, Defendant Howard did not issue any written orders on ADA accommodations.

17. During that time, Defendant Howard only observed the other Defendants' interfering with Plaintiff's ADA rights by agreeing not to document Plaintiff's disability within her defense and then agreeing to ban her Service Dog, and he did nothing.

18. For almost two years, emails show that private criminal defense attorneys (who are therefore not state actors) Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin all refused to bring the ADA into their advocacy with respect to their client's Service Dog. This was malpractice.

19. In 2023, when Plaintiff told Defendants Howard, Tuttle, and Lyman that Defendants Kendall and Sinnott had entered into an agreement by email to ban her Service Dog, Defendant Howard said the state court judge Defendants could not intervene in this agreed ban, **said this was "due to policy,"** and directed Plaintiff to contact a "disability services office" (which does not exist).

20. Over the course of these two years, Plaintiff sent over 150 emails to Defendant Bravo, who is the Statewide ADA Coordinator for the Colorado state judiciary.  Plaintiff asked Defendant Bravo for reasonable accommodations for disability, such as typewritten

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

or electronic documents and advanced notice of the scheduling of court hearing so she could travel from Iowa to Colorado for them.  For two years, Defendant Bravo never once answered Plaintiff.

21. Then, in late November and early December 2023, Defendant Howard changed course and began issuing very long, detailed public (not sealed) orders containing confidential information about Plaintiff's disability and requests for accommodations.

22. On November 27, 2023, Defendant Bravo finally answered Plaintiff's email, not substantively, just with a request to speak with Plaintiff by phone.  They scheduled a call for November 28, 2023.

23. On that recorded phone call, Defendant Bravo told Plaintiff that Bravo herself had indeed contacted Defendant Howard and advised him of the Magistrate's November 9th ruling misinterpreting Rooker-Feldman as inapplicable to ADA denials if announced within an order by a state court judge.

**24. On that call, Defendant Bravo told Plaintiff that she told Defendant Howard to issue ADA accommodations denials as judicial orders.**

25. Plaintiff asked Defendant Bravo why she would insert a confidential request for disability accommodation into a public court order, and Defendant Bravo answered, "ADA accommodations are not confidential."  Yes, they are.

26. Plaintiff asked Defendant Bravo why she would advise a state court judge to mix judicial orders and ADA denials, and Defendant Bravo answered, "so no one can sue."

27. Plaintiff asked Defendant Bravo why she would not instead just advise the state court judge to follow the law, and Defendant Bravo answered, "you really don't get it, do you?"

EXHIBIT N

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

28. Plaintiff asked Defendant Bravo whether ruling on an ADA accommodation might actually limit or abrogate judicial immunity when it exceeds the judicial function of a state court judge, such as when consideration of the request for accommodation does not need to be handled by a state court judge, but should've been handled (confidentially) by the ADA Coordinator.  Defendant Bravo answered, "we can agree to disagree."

29. Defendant Bravo's job is to ensure that the state judiciary is obeying the ADA. Instead, she is advising them how to evade and avoid it.

30. Defendant Bravo was required to treat Plaintiff's disability requests as confidential.  Instead, she ridiculed Plaintiff's "so-called PTSD" on this phone call, and did not present ever present to Judge Howard the reasonable requests for accommodation that Plaintiff told her about on that call, such as extensions of time and provision of the electronic documents that Plaintiff would be able to read with dyslexia software.

31. Instead, on Monday, December 4, 2023, Plaintiff was forced to sign a printed paper plea agreement without a lawyer, without her Service Dog, and without any advocacy of her ADA rights and needs throughout the "jury trial" process, which was actually a 90-minute series of insults and heckles by Defendants Kendall and Howard.

32. On Monday, December 4, 2023, Defendant Judge Howard demanded that Plaintiff share publicly -- in open court – even more details about "exactly why" she needs ADA accommodation for her PTSD disability.   Specifically, Defendant Judge Howard asked Plaintiff:

**"Did Judge Hartman beat you?"**

**"Did Judge Hartman rape you?"**

**"Are you actually alleging that PTSD is a disability?"**

EXHIBIT N

*[NOTE: THIS IS THE PRO SE FORM]*

33. The record shows that Defendants Howard and Kendall were both present in the courtroom and laughing at this inquiry.

34. The questions were so destabilizing to Plaintiff that she was unable to speak for a time, and was unable to futher advocate for herself at that hearing or to proceed to a jury trial.

35. After that she again asked for a lawyer, and Defendant Howard again summarily denied her right to counsel and instead directed her to discuss a plea with Defendant Kendall.

36. Emails show that on September 26, 2023, Defendant Kendall extended a plea offer to Defendant Weeden, offering to stop prosecuting Plaintiff if she were to plead to a misdemeanor of any crime.  Mr. Weeden did not communicate that to Plaintiff, and instead withdrew from the representation.

37. On December 4, 2023, however, Defendant Kendall took advantage of Plaintiff's PTSD disability, aggravated by his and Defendant Howard's questioning.  Defendant Kendall violated multiple ethical duties when he, instead of advocating for ADA accommodations for a known-disabled defendant, he instead laughed as Defendant Howard taunted Plaintiff and asked Defendant Howard to accept a plea that the conference room recording shows was coerced, as he Defendant Kendall remarked multiple times throughout the recording that he "can really see" that Plaintiff was destabilized by their running rape jokes and banter that morning.

38. Plaintiff was alone in court on Monday without a lawyer because Defendant Howard decided that she didn't have a right to counsel, without ever following *Arguello* or any other relevant state law, all the while denying her reasonable accommodations like

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

electronic filing and digital discovery that she can read with dyslexia software, and the presence of her task-trained Service Dog.

39. Defendants have all worked together from December 9, 2021 to the present to deny and ban all of Plaintiff's disability supports in the Boulder District Court, as detailed in Exhibits 1 and 2.

40. Defendant Sinnnott was preceded by Defendants Werking, Mulligan, and Griffin, and her successor was Defendant Weeden.  These criminal defense attorneys <u>all</u> told Plaintiff not to bring her Service Dog to court.  Defendant Sinnott, at a minimum, as far as Plaintiff knows right now, agreed with Defendants Kendall and Howard to "ban" him, due to "the optics."  This was malpractice.

41. The state court judges should have welcomed James, instead of threatening to "impound" him as retaliation if Plaintiff dared bring him to court or anywhere near jurors.

42. Every Defendant named in this case has seen James at work multiples times. None of the Defendants ever complained about him, on or off the record. Defendants Weeden, Werking, Mulligan, Griffin, and Sinnott only advised Plaintiff, as their client, that she should not bring him because she "shouldn't need a dog."

43. Defendant Griffin told Plaintiff that he doesn't like dogs, and asked her to "leave him at home for me."

44. Defendant Griffin told Plaintiff that he and Defendant Mulligan did not want to represent a client with a Service Dog, because Defendant Mulligan's pet dog had attacked Defendant Griffin when he visited their home.

45. In a voicemail to Plaintiff, Defendant Griffin said he will show Plaintiff the stitches on his body from that dog bite, and asked her to "please leave the pup at home for me."

10

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

46. Plaintiff told Defendants Griffin and Mulligan that James would not bite anyone or even be near anyone other than Plaintiff.

47. Plaintiff told them that she needed to have James with her in court, because she had previously experienced tachycardia and tachypnea many times in court and feared that would continue.

48. They still told her that she should "leave the dog at home," and for one hearing she did leave James outside the courthouse with a handler as they told her she had to do.

49. When Plaintiff asked Defendant Griffin if, instead of having to be without her Service Dog, he could possibly arrange for her to attend the hearing via Webex as an ADA accommodation.  He refused, emailing her: "Nope."

50. Many of the Defendants praised James on the record in pretrial proceedings.  Defendant Judge Tuttle and Defendant Judge Howard both told Plaintiff that James was "such a good boy."  Then they both later declined to issue an order that he could be in the courtroom.

51. Clearly, James was never a disruption in court.  No one has ever alleged that.

52. As the trial date got closer, however, Defendants Howard, Tuttle, Lyman, Dougherty, and Kendall increasingly interfered with Plaintiff's ability to access the courts by moving to deny her right to counsel and ordering such a denial, moving the trial date to conflict with medical appointments, refusing to accommodate her medical appointments, and ulitmately threatening to "impound" James if Plaintiff dared bring him near a jury venire or press.

53. Plaintiff has recently learned from information she received in discovery in

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

November 2023 that the criminal defense attorneys who represented her before Defendant Sinnott were also involved in agreements not to pursue ADA rights or requests for reasonable accommodations for Plaintiff, so she has included them as co-Defendants in this case.


### THE *ROOKER-FELDMAN* DOCTRINE DOES NOT APPLY

54. Many claims based on Defendants' actions during this time period are not yet ripe, such as malicious prosecution and false imprisonment.  The state court cases continue to languish in the Boulder District Court after each time the Colorado Court of Appeals reverses, and then these Defendants and their colleagues continue doing "whatever [they] want" to Plaintiff.

55. Plaintiff isn't asking this federal Court to overturn the state courts.

56. Plaintiff is asking for compensatory damages for the actions that violated the ADA along the way in the process of the state court actors doing "whatever [they] want," such as their refusal to enter an order stating that she could have her Service Dog, their reaching agreements (not court orders) with each other to summarily "ban" her Service Dog from the court, which denied her meaningful access to the court and caused damage to her body, as she stood in court alone without James, unable to speak or breathe deeply at times.

57. The claims in this federal court action for the independent violations of the Americans with Disabilities Act ("ADA") and related laws are ripe for review, and – as discussed in Exhibits 1 and 2 – they are not subject to the *Rooker-Feldman* Doctrine, because Plaintiff is not requesting that a federal court review a state court judgment.

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

58. Plaintiff's claims in this case are <u>not</u> "inextricably intertwined" with the claims adjudicated in the state court, because the federal court can decide the federal claims without "overturning" the state claims.

59. Plaintiff is <u>not</u> arguing entitlement to damages in this federal court based on the state court having reached the wrong ruling (even when it did); Plaintiff is entitled to damages in this federal court because the state court did not follow federal law <u>in the process of</u> <u>making</u> <u>its decisions</u>.

60. Defendant Bravo admits that she coached Defendants Howard, Dougherty, and Kendall in how to "dodge the ADA" and other federal laws designed to protect Plaintiff's access to due process in the state courts.  This was interference with Plaintiff's ADA rights, and the official capacity Defendants are liable for the damages caused, such as Plaintiff's inability to meaningfully access her fundamental Constitutional right to due process, to petition the courts for redress, and to access the courts at all.

61. The <u>outcome</u> (the actual state court rulings and orders) is <u>not</u> the basis for Plaintiff's <u>entitlement</u> to damages.  In fact, at the time of the original Complaint, Defendants Howard and Tuttle were still refusing to issue any order at all.  Of course, the refusal to rule on an ADA accommodaiton <u>is</u> a denial, but the factual distinction is important to note here, because there is no way that *Rooker-Feldman* could have applied to an order that was never issued.

62. The basis for Plaintiff's entitlement to damages here, rather, is the violation of ADA Title II <u>in the decision-making processes</u> of court staff and individual defense attorneys, not in the ultimate outcomes, decisions, or orders they reached.

63. Plaintiff is entitled to damages in this court because the state court actors (and

EXHIBIT N

*[NOTE: THIS IS THE PRO SE FORM]*

the individual defense attorneys who interfered) didn't follow the ADA as they were in the process of acting in the state courts.  Like they say on the record: they just did whatever they wanted.

64. Defendant Judge Howard said on the record in the state court: "I'm doing what I want to do.  If you don't like it, you can sue in the federal court."

65. Defendants understand that Plaintiff can sue here, because they know that the *Rooker-Feldman* Doctrine does not bar ADA and other federal claims.

66. This is not an issue of first impression.  The Magistrate should have read the federal circuit cases that have ruled that ***Rooker-Feldman* does not bar ADA claims**, such as *Sheehan v. Marr*, 207 F.3d 35 (1st Cir. 2000), a copy of which is attached hereto as **Exhibit 3** and is incorporated herein by reference, in which the U.S. Court of Appeals for the 1st Circuit ruled: "**We agree that Rooker- Feldman is not a bar and hold that the district court should have proceeded to the merits of Sheehan's ADA claim.**"

67. The Magistrate also should have considered the federal circuit cases ruling similarly when considering similar concepts and laws, such as *Behr v. Campbell*, also a *pro se* case, a copy of which is attached hereto as **Exhibit 4** and is incorporated herein by reference, in which the U.S. Court of Appeals for the 11th Circuit reiterated that "***Rooker-Feldman* does not block claims that require some reconsideration of a decision of a state court if the plaintiff presents some independent claim**, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."

68. Likewise, in *Reed v. Illinois*, the U.S. Court of Appeals for the 7th Circuit ruled that: "For one court (the state court) to deny [ADA] accommodations without which a disabled [party] has no chance of prevailing in her trial, and for another court (the federal

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

district court) on the basis of that rejection to refuse to provide a remedy for the discrimination that she experienced in the first trail, is to deny the [disabled party] a full and fair opportunity to vindicate her claims." **The 7th Circuit declined to extend collateral estoppel to bar her ADA claims.** Ms. Reed was a (civil) state court user who, like Plaintiff, is a woman, has communication disability, was forced to (civil) trial without a lawyer and without the ADA accommodations she requested, and was heckled by state court judges "on grounds suggestive of a failure to understand [the disabled litigant's] problems in communicating."

69. The Magistrate also should have considered how this case is unlike any case in which *Rooker-Feldman* was found to apply to ADA claims. For example, the difference between the *Sykes* case and this case is that, in this case, James was "banned" from a Colorado state criminal court courtroom <u>by an **agreement**</u> <u>between a prosecutor and private criminal defense counsel</u>, not by a state court judge's direct <u>order</u>, and not by any agreement involving the state court judge in any way, Defendant Howard says. *See Sykes v. Cook County Circuit Court Probate Division*, No. 15-1781 (7th Cir. 2016).

70. In fact, on Monday, December 4, 2023, Judge Howard said on the record, "I don't know who said they would impound your boy. **I was told that I can order that no one can impound him now.**"

71. Plaintiff had been asking for such an order for months! Defendants Howard, Tuttle, and Lyman had all refused to enter such an order.

72. Sadly, by the time Defendant Howard said he "was told" that he could enter the order, Plaintiff was already without James in court on the trial date. Plaintiff told Defendant Howard that yes, she would like to go and get James. Instead, Defendant Howard

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

launched into his series of rape jokes and a plea was coerced, which Plaintiff appealed yet again, on the same day, to the Colorado Court of Appeals.

73. Plaintiff was never able to retrieve James to be with her in court again at any time after Defendants' agreement.

74. In *Sykes*, a probate judge ordered an animal to be removed from the courtroom. In this case, the state court judges all just refused for several months to make any formal order for or against James; instead, Defendant state court Judges Howard, Tuttle, and Lyman all spent months directing Plaintiff to other decision-makers, including a nonexistent "disability services office," while the prosecutor and defense attorney Defendants made agreements to threaten a Golden retriever.

75. The failure to rule on the agreement of the prosecutor and the defense attorney in this case was arguably a denial, and arguably even interference with Plaintiff's Title II rights, but **it did not take the form of a court order**.

76. The failure to issue a court order arguably endangered James by leaving him subject to being "impounded" at the whim of the prosecutor, and it caused Plaintiff damages because she was not able to have James with her in court, but the failure to rule did not **order** James to be excluded like the order in *Sykes* specifically excluded that dog from that courtroom by order of that court.

77. The denial of the dog in *Sykes* was ordered in a court order, and that's why the Court of Appeals for the 7th Circuit relied on *Rooker-Feldman* to dismiss for lack of jurisdiction when Ms. Sykes petitioned the federal court to "reverse" the state court's order, because a federal court has no jurisdiction to reverse a state court.

78. A federal court has ample Article III jurisdiction however to enforce the ADA and

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

award compensatory damages to plaintiffs whose rights are denied in the proceedings of a state court action when a prosecutor and defense attorneys agree to evade and interfere with those rights.  That is what happened in this case.

### *YOUNGER* ABSTENTION ALSO DOES NOT APPLY

79. When a federal court has jurisdiction to hear claims, the court may be obliged to abstain if a federal-court judgment on the claim would interfere with an ongoing state proceeding implicating important state interests. *DL v. Unified School Dist. No. 497*, 392 F.3d 1223 (10th Cir. 2004).

80. The most common example of this, which is described as *Younger* abstention, is a federal suit to enjoin a pending state criminal proceeding. *Id*. at 1228; *See Younger*; *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir.1999) (applying Younger).  The U.S. Supreme Court has clarified that "*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

81. Again, the matters in Plaintiff's state court proceedings and in this federal Complaint are not parallel, and she is not asking this Court to enjoin the state proceedings.  She is not seeking an injunction at all now that the coerced plea was entered and is on appeal yet again to the Colorado Court of Appeals.

82. When she filed the original Complaint, Plaintiff also was not seeking to stop the state court proceedings.  She only wanted an injunction and declarative relief as to the conduct that was violating ADA Title II, not to stop the state proceedings.

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

83. In 2021, Plaintiff had also asked this Court to order these and other Defendants to stop violating ADA Title II during those proceedings.  Instead, the judge-defendant in that case, state court Judge Andrew Hartman, had his girlfriend swear an arrest warrant application and then they issued a "failure to appear" warrant (though Plaintiff had in fact appeared at the hearing in the state court on that very morning).  Hartman ordered Plaintiff to be held in a solitary cell without bond for five weeks until that 2021 suit in this Court was dismissed without prejudice after this Court had no idea why Plaintiff had disappeared.

84. The U.S. Supreme Court has ruled that *Younger* abstention is inappropriate where, as is the case for Plaintiff here, a federal plaintiff cannot pursue her federal contentions in the ongoing state proceeding. See *DL*, 392 F.3d at 1230; *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-37, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *See Lebbos v. Judges of Superior Court*, 883 F.2d 810, 815 (9th Cir.1989) (no abstention where federal contentions are not raisable as state court defenses).

85.      In *Younger*, the U.S. Supreme Court ruled that "a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury." *Younger*, 401 U.S. at 43-45; *J.B. ex rel. Hart*, 186 F.3d at 1291.

86. Plaintiff is not asking this federal Court to enjoin any state criminal proceeding, because **the "great and immediate irreparable injury" that the *Younger* court warned of has already happened to Plaintiff**.

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

87. The actions that Defendants took in violation of ADA Title II in the state proceeding had nothing to do with the substance of that proceeding. The only relation between this federal suit and the state court proceedings is that at the times when the official-capacity Defendants denied Plaintiff access to the courts, which violated ADA Title II, they were also working as procedural administrators on behalf of "the People" in that state court proceeding.

88. Defendants' actions in the state court proceeding now on appeal yet again to the Colorado Court of Appeals has caused Plaintiff to be repeatedly denied accommodations for disability, denied prescribed medications for long periods of time, tortured in solitary confinement for long periods of time, publicly shamed in national media due to Defendants' own press releases, and hurt in many other ways. No appellate relief can remedy or undo that. Abstention is not at issue.

89. As in *Guttman*, abstention is inapplicable to Plaintiff's current claims here anyway. *See Guttman*, 446 F.3d at 1033 ("A federal lawsuit for damages resulting from ADA violations by prosecuting and adjudicatory parties in quasi-criminal or criminal proceedings is entirely separate from the state court proceedings and the substantive issues the parties prosecuted.").

90. There is also no opportunity for Plaintiff to file any ADA violations claims in the state court case that is now in the Colorado Court of Appeals. *Id*. at 1291 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1177-78 (10th Cir. 2001). This Court is the only forum in which Plaintiff can raise the federal claims she raises.

<div style="color:red">**EXHIBIT N**</div>

*[NOTE: THIS IS THE PRO SE FORM]*

**CLAIMS FOR RELIEF**

**§ 504 of the Rehabilitation Act of 1973,
29 U.S.C. § 794(a),
and Title II of the ADA**

91. ADA Title II applies to state and local government entities, and, in subtitle A, protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities. Title II extends the prohibition on discrimination established by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to all activities of state and local governments regardless of whether these entities receive federal financial assistance.

92. To state a claim under Title II of the ADA, the plaintiff must plead that: (1) she is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefit of the services, programs, or activities of a public entity, or who was subjected to discrimination by such an entity; (4) by reason of her disability. The Magistrate's Order concedes that Plaintiff already did this in the original Complaint; however, she again states: Plaintiff is a "qualified person with a disability" for purposes of the ADA, because she is a disabled person who needs to access the state courts in Colorado, which are both a public place and a "program or service."  A state courtroom is a public place.  State criminal court proceedings are Constitutionally required to hold public trials, with few exceptions, none of which applied to Plaintiff.  ADA Title II is clear that state court proceedings are a program or service.  Colorado state courts also receive massive federal funding, as does the Boulder District Attorney's Office, which is also a "program or service."  All of these elements require that the state courts obey federal law, including the ADA.  Plaintiff lives with PTSD and dyslexia, which are each listed by name as a disability

20

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

in the actual text of the ADA.  Moreover, dyslexia and PTSD impair Plaintiff's ability to work, sleep, read, write, and speak.  She is therefore a "qualified person with a disability" under the ADA.

93. ADA Title II requires public entities to permit service animal to accompany people with disabilities in all areas where members of the public are allowed. 28 C.F.R. §35.136(g).  A state court discriminates against a person with a service animal by not allowing his service animal to accompany the litigant.  ADA Title II requires public entities to permit service animal to accompany people with disabilities in all areas where members of the public are allowed. *Id*.

94.Per *Tennessee v. Lane*, as discussed in the original Complaint and conceded in the Magistrate's Order, sovereign immunity is not an issue because accessibility to the courtroom is involved.

95.The agreement by these Defendants to violate Plaintiff's rights also violated the 14th Amendment to the U.S. Constitution by denying her due process and denying her access to the courts.  Because of this, Plaintiff can and herein does seek both compensatory damages as well as injunctive relief, via the ADA.  The injunctive relief Plaintiff is requesting is simply an order that Defendants obey the portions of the ADA applicable to each of them; this would not "interfere" with the state courts or anyone else, because it is already the law.  Defendants should already be doing it.

**ADA Retaliation**

96.Generally only entities are liable under the ADA. However, the Title II Anti-

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

Retaliation Section has been held to impose personal liability for (and only for) retaliation under the Public Services provisions.

97. The U.S. Court of Appeals for the 11th Circuit, in *Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003), wrote a detailed opinion saying that individual liability attaches when retaliation occurs under Title II of the ADA, because: Title II's retaliation provision specifically includes the word "person," the statute with respect to individual liability is inscrutable, solid policy reasons exist for imposing individual liability in the Title II context, and the Department of Justice in 28 C.F.R. § 36.104 refers to a private entity as including a "person" (and since that rule went through proper rulemaking it is entitled to deference).

98. Therefore, individual liability exists when a defendant has retaliated against a plaintiff in violation of Title II of the ADA.

99. Plaintiff brings that claim here now against all Defendants for the ways they retaliated against her as she asserted her Title II rights, as described herein, including in Exhibits 1 and 2.

## ADA Interference

100.    The ADA interference provision states that it is "unlawful to coerce, intimidate,

threaten, or interfere…" with any individual in their exercise of "any right granted or protected" by the ADA.  *See* 42 U.S.C. sec. 12203(b).

101.    These protected rights include disability accommodations, including the right to access a courtroom with a Service Dog.

102.    42 U.S.C. § 12203(a) and (b) prohibit retaliation and interference, coercion,

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

or intimidation.  This section is broad and reaches situations where the conduct may not meet the "materially adverse" standard required for retaliation.

103.    The EEOC gives specific examples as to what might constitute interference, including: **coercing an individual to relinquish or foregoing an accommodation to which he or she is otherwise entitled**, and threatening adverse treatment if she does not voluntarily submit to a medical examination or inquiry that is otherwise prohibited under the statute.

104.     §12203 also applies to Title II.

105.    As previously stated herein, all Defendants all did of these things.

106.    Although the interference provision does not list potential defendants, the remedies clause of 42 U.S.C. §12203 clarifies that different remedies apply depending upon whether Title I, Title II, or Title III is violated.

107.    When Title II is violated, as it was in this case, a plaintiff is entitled to compensatory damages, which Plaintiff is requesting here.


**Negligence – Legal Malpractice**

108.    **DUTY.**  Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin each had a duty to act as a reasonably careful attorney having and using that degree of knowledge and skill of attorneys practicing from December 2021 to the present.  Such an attorney would have followed the law.   A reasonably competent attorney would have advocated for her court access rights under the ADA, would never have agreed with the prosecutor to "ban" her Service Dog, and would never have advised her not to seek or use much-need accommodations for her known disability.

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

109.   **BREACH.**  This duty was breached by the outright explicit refusal to advocate for Plaintiff's court access rights under the ADA (which was spoken by Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin in recorded calls and voicemails; spoken by them on the record in the state court case; and written by them to Plaintiff in many, many emails and text messages).  Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin breached their duty of care to Plaintiff when they chose not to bring the ADA into their advocacy with respect to a client's Service Dog and need for dyslexia reading accommodations, as discussed hereinabove.

110.   Plaintiff's own series of defense attorneys – Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin – and each of their staff members, employees, and contractors whom they negligently failed to supervise -- instead of advocating for Plaintiff, went as far as agreeing with the prosecutor to deny her Service Dog, agreeing with the prosecutor to abandon her disability rights, and advising Plaintiff directly not to seek or use much-need accommodations for her known disability.

95. **CAUSATION.**  The breach of duties by Defendants Weeden, Sinnott, Werking, Mulligan, and Griffin was the actual and proximate cause of Plaintiff's damages, listed hereinbelow, because Judges Howard, Tuttle, and Lyman actually ruled on the record that they were relying on the specific statements made by these Defendants, and that they were denying Plaintiff's rights in their rulings because of those statements.  For example, all of these Defendants had agreed with the prosecutor that Plaintiff "didn't need" her Service Dog, so the judges relied on that when they refused to enter an order for James to be "allowed" in the courtroom.  The judges saw no urgency or need, because

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

Plaintiff's lawyers all neglected to include the Service Dog in their advocacy, despite knowing how much Plaintiff needed James, because they all saw his medical endorsements and documentation, and Plaintiff told them all that she needed James to be with her in the courtroom.  When Plaintiff asked Defendants to work seriously on her case and told them that she needs her Service Dog and other ADA accommodations, they laughed and withdrew from the representation, because – as the ADC payment records in Plaintiff's possession after an open records request show – after just a few weeks of representing Plaintiff, these Defendants had all already requested and received the maximum payment possible for their very minimal work on the case.  They didn't want to do any more work, even when they knew their failure to advocate for her disability rights would irreparably harm her.  The damages they caused were foreseeable and indeed foreseen.

96. **DAMAGES.**  Plaintiff has suffered general and special damages, including by way of illustration and without limitation, loss of income, loss of earnings capacity, loss of business opportunities, attorney fees, litigation expenses, loss of reputation, physical injuries, and severe emotional distress.  To put a finer point on this, Plaintiff has had damages as described hereinabove, including delaying her access to due process, public humiliation in a public courtroom when the judge heckled her with rape jokes as she stood alone without counsel, costs of traveling to the innumerable *Bergerud* hearings initiated by these lawyers, lost opportunities and the shame of plea coercion, loss of opportunities and access to live, work, travel to certain countries or places in this country, volunteer in certain places or with certain populations, now and in the future, denial of her access to established medical care while having to travel for the hearing, and more.

EXHIBIT N
*[NOTE: THIS IS THE PRO SE FORM]*

97. Plaintiff, who is an Iowa resident brings this Colorado state court claim for malpractice against the Colorado defense attorneys in this federal district court pursuant to its diversity jurisdiction, as there is diversity of citizenship and the amount in controversy has well exceeded $75,000 due to climbing medical costs.

98. Because access to the courts is a fundamental Constitutional right, the U.S. Supreme Court is clear that those of the Defendants who are state actors have no immunity.

99. Plaintiff also now petitions for injunctive relief against the judicial officers here via 42 U.S.C. § 1983, as they are now obstructing her state-guaranteed right to take a direct appeal of their rulings, which makes the ADA's declarative relief unavailable to her. Hopefully they will stop this soon and this paragraph will become moot.

100. ADA requests for accommodation are confidential.  Judge Howard violated the ADA when he published Plaintiff's requests in open court and in public filings.  The facts of the requests for accommodation are confidential by law, and the contents of the actual requests are also confidential.   It was illegal for Judge Howard and other Defendants to publicly state the facts and details of Plaintiff's disability and the reasons she needs accommodation.

101. It was also error for Defendant Judge Howard to request and to allow District Attorney Defendant Kendall to opine on a defendant's confidential requests for ADA accommodations.  Defendant Judge Howard not only illegally published Plaintiff's requests for ADA accommodations.  He then asked Defendant District Attorney Adam Kendall for "responses" and "objections" to Plaintiff's ADA accommodation requests, and ruled in

**EXHIBIT N**

*[NOTE: THIS IS THE PRO SE FORM]*

favor of Defendant Kendall, denying Plaintiff the very accommodations that Judicial's own website says are "reasonable" for her specific disability.

102. It was error for Defendant Kendall to continue to publish Plaintiff's ADA accommodation requests, to object to them, and to coerce a plea once he convinced Defendant Howard to deny them.  The publishing of requests for ADA accommodations is illegal regardless of what conclusion any judge reached, and regardless of what the judge actually ordered.  For this reason alone, the *Rooker-Feldman Doctrine* cannot apply to these facts, and Plaintiff's suit cannot be barred.

## RELIEF REQUESTED

WHEREFORE, Ms. Cohen respectfully requests judgment from this Court for:

- An injunction stating that Defendants must follow the ADA;
- Compensatory damages, including damages for physical pain and suffering, with interest;
- In the event counsel is retained for trial, their attorney fees and costs; and
- Other relief the Court determines proper in this case.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury in this matter.

## CERTIFICATE OF REVIEW
### (LEGAL MALPRACTICE)

This suit involves claims for damages arising from professional negligence as a result of an act or omission committed by attorneys during the performance of the attorneys' duties pursuant to a contract with the Office of Alternate Defense Counsel

**EXHIBIT N**

*[NOTE: THIS <u>IS</u> THE PRO SE FORM]*

pursuant to section 21-2-105. Therefore, Plaintiff certifies that she has consulted an expert criminal defense attorney, a person who has expertise in the area of the alleged negligent conduct, and that the professional who has been consulted pursuant to part 6 of article 20 of title 13, C.R.S. has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification within the meaning of section 13-17-102 (4). The person consulted can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience, the consultant is competent to express an opinion as to the negligent conduct alleged.

### F.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____

 (Plaintiff's signature)

<u>December 8, 2023</u>